FILED
2026 Sep-30 PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **EDGAR GRAVITT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:22-cv-01317-MHH** |
| | } | |
| **MATSU ALABAMA, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION AND ORDER**

This action arises from a lawsuit filed Edgar Gravitt filed against his former employer, automotive parts manufacturer Matsu Alabama, Inc. (Doc. 35). Mr. Gravitt alleges that Matsu discriminated and retaliated against him in violation of the Americans with Disabilities Act and interfered with his request for leave pursuant to the Family and Medical Leave Act. (Doc. 35).

Matsu filed a motion for summary judgment. (Doc. 27, 28, 29). The Court granted Matsu's motion for summary judgment on Mr. Gravitt's ADA discrimination claim. (Doc. 47, p. 36). The Court denied Matsu's motion for summary judgment on Mr. Gravitt's ADA retaliation and FMLA interference claims. (Doc. 47, p. 36). Pursuant to Rules 54(b) and 59(e) of the Federal Rules of

Civil Procedure, Matsu asks the Court to reconsider its partial denial of Matsu's motion for summary judgment, (Doc. 47, Doc. 49).

Rule 54(b) of the Federal Rules of Civil Procedure governs "a district court's reconsideration of interlocutory orders." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). Interlocutory orders, or orders "that do not dispose of the whole case," include "denials of summary judgment." *Dupree v. Younger*, 598 U.S. 729, 734 (2023).

"Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Hornady*, 118 F.4th at 1380 (italics in *Hornady*). "Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Hornady*, 118 F.4th at 1380 (citations omitted). A "district court typically [does] not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashe[s] arguments already considered and rejected." *Hornady*, 118 F.4th at 1381 (citation omitted). District courts "have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Hornady*, 118 F.4th at 1381.

Under Rule 59(e), a party may ask a district court to "alter or amend a judgment." FED. R. CIV. P. 59(e). "A Rule 59(e) motion cannot be used to relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (alterations adopted) (quoting *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). The "only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Town of Palm Beach*, 988 F.3d at 1287 (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). "In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). A court should reconsider an interlocutory order only when a party identifies new evidence, a change in controlling law, or a clear error that a court must correct to avoid manifest injustice.

When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Summary judgment is meant to separate real, genuine issues from issues that are sham. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). Resolving summary judgment based on discrepancies or variations in witness testimony "would require too much from lay witnesses and would deprive the trier of fact of

the traditional opportunity" to evaluate the credibility of the differing statements. *Tippens*, 805 F.2d at 953-54.

Matsu argues that the Court's ruling on the ADA retaliation claim and the FMLA interference claim rests, in material part, on the mistaken finding that the evidence, viewed in the light most favorable to Mr. Gravitt, indicated that the decisionmaker, Robert Teixeira, knew Mr. Gravitt was planning to undergo an additional surgery and would have to take additional leave. Matsu argues that the record contains no evidence establishing that Mr. Teixeira had such knowledge. (Doc. 49).

In viewing the evidence in the record in the light most favorable to Mr. Gravitt, the Court cited Mr. Gravitt's EEOC charge. (Doc. 47, p. 7) (citing Doc. 35-1, p. 3). An EEOC charge is a statement made under oath or affirmation. 42 U.S.C. § 2000e-5(b). In the EEOC charge that Mr. Gravitt signed in October 2021 under penalty of perjury, (Doc. 35-1, p. 2), he stated that after he returned from six-weeks of leave for a rhinoplasty procedure, he told Mr. Teixeira that he "would need some additional follow-up surgery," and Mr. Teixeira "was aghast to hear this and asked whether [Mr. Gravitt] would be out '*for another six (6) weeks?!*'" -- (Doc. 35-1, p. 3) (italics in Doc. 35-1). Mr. Gravitt filed his lawsuit in this matter in October 2022, and he attached his EEOC charge to his original complaint. (Doc. 1; Doc. 1-1).

Thus, Matsu has had Mr. Gravitt's sworn statement regarding Mr. Teixeira's reaction to his notice about additional surgery since this lawsuit began.

Matsu argues that Mr. Gravitt contradicted his sworn statement in his deposition. Matsu relies on the following exchange concerning Mr. Gravitt's plan to take additional medical leave:

> Q: Did you have any other conversation related to that scheduling?
>
> A: I had a conversation with Barry, told him that I was going to have another surgery to get my sinus cavity closed, that I wasn't sure when yet. His response was, "So tell me, are you going to be out for another four weeks?" I never scheduled after that point. . . .
>
> Q: Any other conversations you had relating to that procedure?
>
> A: No, sir.
>
> Q: Do you know if Mr. Courtney discussed that with anyone else?
>
> A: I have no idea. . . .
>
> Q: Other than what we discussed, any other conversations you had with anyone at Matsu about your medical conditions?
>
> A: Just with the HR department. . . .
>
> Q: And what was said in that conversation?
>
> A: I just let her know that I was probably going to have to go out to have that done and I wouldn't know, had no idea how long it would take.
>
> Q: This is Debbie Dabbs?
>
> A: Yes, sir. . . .

Q: Was there anything else said in that conversation?

A: No, sir.

(Doc. 27-1, p. 47, tpp. 178-81). Matsu argues that Mr. Gravitt's deposition testimony is "clear and unambiguous," and Mr. Gravitt identified conversations with only Mr. Courtney and Ms. Dabbs about an additional procedure. (Doc. 52, p. 4). According to Matsu, Mr. Gravitt "cannot create an issue of fact by an error in an EEOC charge that is corrected by unambiguous deposition testimony." (Doc. 52, p. 6).

Under the sham affidavit rule, a party who gives clear deposition testimony "cannot thereafter" create an issue of fact with an affidavit that contradicts the party's deposition testimony without explanation. *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.* (11th Cir. 1984); *Bell v. City of Auburn*, 722 Fed. Appx. 898, 899 (11th Cir. 2018). Courts apply this rule "sparingly because of [its] harsh effect." *Allen v. Board of Public Education*, 495 F. 3d 1306, 1316 (11th Cir. 2001) (quoting *Rollins v. Tech South*, 833 F.2d 1525, 1530 (11th Cir. 1987)). Here, Mr. Gravitt made a sworn statement in his EEOC charge more than one year before his deposition, and Mr. Gravitt has not disavowed the information in his EEOC charge. And, viewing the evidence in the light most favorable to Mr. Gravitt, his statement in his EEOC charge does not unambiguously contradict his deposition testimony. The deposition testimony flows from a question about scheduling the second

surgery. Mr. Gravitt's statement in his EEOC charge concerns a conversation he had with his supervisors when he returned from his first surgery. Discrepancies between these statements raise credibility issues, and juries decide credibility issues. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[A]ny conflict or discrepancy between" the EEOC charge and Mr. Gravitt's deposition testimony "can be brought out at trial and considered by the trier of fact." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).

Thus, the Court applied the summary judgment standard and, viewing the evidence in the light most favorable to Mr. Gravitt, determined that there was evidence from which jurors could conclude that Mr. Teixeira knew that Mr. Gravitt needed a second surgical procedure. At trial, jurors may see the evidence as Matsu describes it. Because Matsu has not identified newly discovered evidence or a material error of law or fact that warrants summary judgment in its favor on Mr. Gravitt's ADA retaliation and FMLA interference claims, the Court denies Matsu's motion for reconsideration.

The Clerk of Court shall please TERM Doc. 49.

**DONE** and **ORDERED** this September 30, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE